**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| SEAN V. TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16cv256 |
| | ) | |
| SWIFT TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant's Motion to Dismiss" (Docket Entry 10) (the "Motion to Dismiss"), as well as for orders on the "Motion to Amend Relief" (Docket Entry 22), the "Motion to Subpoena" (Docket Entry 16), the "Motion to Compel Discovery" (Docket Entry 26) (the "Motion to Compel"), the "Motion to Bifurcate" (Docket Entry 23), the "Motion to Strike" (Docket Entry 28), and the "Motion to Leave" (Docket Entry 17). For the reasons that follow, the Court (1) will grant the Motion to Amend Relief, (2) will deny the Motion to Subpoena, Motion to Compel, Motion to Bifurcate, Motion to Strike, and Motion to Leave, and (3) should grant in part and deny in part the Motion to Dismiss.

## BACKGROUND

In March 2016, Sean V. Terry (the "Plaintiff") commenced this action against Swift Transportation (the "Defendant") in the United States District Court for the District of Columbia (the "D.C.

Court"). (See Docket Entry 1.) As "[n]one of the parties appear to reside or conduct business in the District of Columbia, and it does not appear that any of the events giving rise to . . . [P]laintiff's claims occurred [t]here" (Docket Entry 3 at 1),[1] the D.C. Court transferred the action to this Court (id. at 2). Thereafter, Plaintiff filed an Amended Complaint, which elaborates upon the factual allegations underlying his claims against Defendant. (Compare Docket Entry 5, with Docket Entry 1.)

Specifically, Plaintiff asserts an invasion of privacy claim regarding the alleged manner in which Defendant's "Medical Review Officer" (occasionally, the "MRO") conducted his Commercial Driver's License (the "CDL") physical "[d]uring the week of 01/27/2009," when Plaintiff "attended an orientation at [Defendant's] Greer, South Carolina Terminal." (Docket Entry 5 at 1, 3; see also Docket Entry 14 at 1 (discussing "the 2009 claim of Invasion of Privacy").) Plaintiff further maintains that Defendant defamed him by falsely reporting to at least six prospective employers that Plaintiff "failed a drug test." (Docket Entry 5 at 2.) According to Plaintiff, this "libel was last published in June 2015." (Id.) These false reports, Plaintiff contends, also violate 49 C.F.R. §§ 390.35, 390.37. (Id. at 2-3.) The former regulation prohibits the making of intentionally false statements

---

1 Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

in records required by the Federal Motor Carrier Safety Regulations (the "FMCSR"), see 49 C.F.R. § 390.35(a), and the latter regulation provides that "[a]ny person who violates [Section 390.35] . . . may be subject to civil or criminal penalties," 49 C.F.R. § 390.37.

Additionally, Plaintiff contends that Defendant violated his rights under the Fair Credit Reporting Act (the "FCRA") when Defendant sent him home from "orientation at the Greer, South Carolina Terminal in 2014" without "provid[ing] a reason" for his termination. (Id. at 2.) Finally, Plaintiff asserts a Title VII discrimination claim against Defendant for allegedly "Black Ball[ing]" him with other employers and terminating his participation in Defendant's orientation for racial reasons. (Id.) In connection with these claims, the Amended Complaint "seeks $23 million dollars compensatory and punitive damages, and an injunction." (Id. at 3.)

Defendant moved to dismiss Plaintiff's Amended Complaint. (See Docket Entry 10.) In addition to responding to Defendant's Motion to Dismiss (see Docket Entries 14-15), Plaintiff filed multiple motions (see Docket Entries 16-17, 22-23, 26, 28), to which Defendant responded (see Docket Entries 19-20, 24-25, 27, 29).

3

## DISCUSSION

### I.  Plaintiff's Motions

### A.  Motion to Amend Relief

Plaintiff seeks leave to add the following as requested relief in his Amended Complaint:  "Plaintiff's Court costs, all Court related expenses, Court related travel fees, and, possible Attorney(s) fees."  (Docket Entry 22 at 1.)  At this stage of the proceedings, Plaintiff may amend his Amended Complaint "only with [Defendant's] written consent or the [C]ourt's leave."  Fed. R. Civ. P. 15(a)(2).  Defendant consents to the requested amendment.  (See Docket Entry 25 at 2 ("Defendant does not object to the motion to the extent it identifies the damages he is seeking.").)  Accordingly, the Court will grant the Motion to Amend and deem the Amended Complaint to include as requested relief "Plaintiff's Court costs, all Court related expenses, Court related travel fees, and, possible Attorney(s) fees" (Docket Entry 22 at 1).

### B.  Discovery Motions

Plaintiff also seeks discovery from Defendant through the Motion to Subpoena and Motion to Compel.  As its name suggests, the Motion to Subpoena seeks to subpoena certain documents from Defendant.  (See Docket Entry 16 at 1.)  In addition, the Motion to Compel seeks to compel a response to Plaintiff's "Request for Production of Documents," which Defendant allegedly "ha[s] not responded to, nor seemed to even have acknowledge[d]."  (Docket

4

Entry 26 at 1.) Defendant opposes both motions as premature and, in regard to the Motion to Subpoena, as an improper discovery vehicle. (See generally Docket Entries 20, 27.)

The Court has not yet entered a case-management scheduling order in this action. (See Docket Entries dated Mar. 8, 2016, to present.) As such, the parties lack authorization to conduct discovery. See M.D.N.C. L.R. 16.1(a); see also Fed. R. Civ. P. 26(d)(1). Accordingly, the Court will deny as premature the Motion to Subpoena and Motion to Compel. After the Court authorizes discovery through the establishment of the case-management schedule, Plaintiff may pursue proper discovery regarding any claim that survives Defendant's Motion to Dismiss.

### C.  Motion to Bifurcate

Plaintiff further asks for "this Trial to be divided into two Parts, separate (Liability and Damages) proceedings." (Docket Entry 23 at 1.) Defendant opposes this request. (See Docket Entry 24.) "For convenience, to avoid prejudice, or to expedite and economize, the [C]ourt may order a separate trial of one or more separate issues . . . ." Fed. R. Civ. P. 42(b). The Court possesses considerable discretion regarding bifurcation. F & G Scrolling Mouse, L.L.C. v. IBM Corp., 190 F.R.D. 385, 387 (M.D.N.C. 1999); see also White v. Bloomberg, 501 F.2d 1379, 1385 (4th Cir. 1974) ("We hold that the district courts are free to tailor an appropriate procedure to fit the facts and the pleadings and to

5

select what seems best for a given case."). Nevertheless, bifurcation remains an unusual event, as generally "a single trial will be more expedient and efficient." F & G Scrolling Mouse, 190 F.R.D. at 387.

The party seeking bifurcation "bears the burden of convincing the [C]ourt that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the [C]ourt, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party." Id.; accord Toler v. Government Employees Ins. Co., 309 F.R.D. 223, 225 (S.D. W. Va. 2015). "Merely presenting some proof which supports bifurcation is not enough" to satisfy this burden. F & G Scrolling Mouse, 190 F.R.D. at 387. Here, Plaintiff presents no arguments, let alone evidence, suggesting that bifurcation would promote judicial economy and avoid undue prejudice to Defendant. (See generally Docket Entry 23.) Thus, the Court will deny the Motion to Bifurcate.

### D. Motion to Strike

Plaintiff additionally moves "to strike out the Defendant's false information." (Docket Entry 28 at 1.) In so doing, Plaintiff identifies various statements in Defendant's Motion to Dismiss and supporting memorandum, but offers little explanation of the purported errors in the identified statements. (See id. at 1-3.) Rather, Plaintiff urges the Court to "[f]act check the

6

[D]efendant's claims, and you will see why I now move to submit this Motion to Strike." (<u>Id.</u> at 3.)

Rule 12(f) of the Federal Rules of Civil Procedure (the "Rules") authorizes courts to "strike from <u>a pleading</u> an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Rule 7(a) identifies which documents qualify as pleadings in federal cases. <u>JHRG LLC v. StormWatch, Inc.</u>, No. 1:09cv919, 2011 WL 3111971, at *5 (M.D.N.C. July 26, 2011); <u>see also</u> <u>General Tire & Rubber Co. v. Watkins</u>, 331 F.2d 192, 195-96 (4th Cir. 1964) (analyzing whether filing constituted "a pleading within the meaning of [the] Rule[s]" by reference to Rule 7(a), which "defines pleadings"). Under Rule 7(a), the complaint; any third-party complaint; answers to (1) such complaints, (2) any crossclaims, and (3) any counterclaims; and, "if the [C]ourt orders one, a reply to an answer," constitute the pleadings. Fed. R. Civ. P. 7(a). This definition does not include motions to dismiss and their supporting memoranda. <u>See</u> <u>id.</u> Therefore, the Court will deny the Motion to Strike.

### E. Motion to Leave

Finally, Plaintiff requests "that, a Motion to Leave be granted for a Time Extension, of the Time barred claim of Invasion of Privacy/Intrusion of Solitude." (Docket Entry 17 at 1.) Defendant opposes the Motion to Leave on the grounds that courts

7

lack authority to extend a statute of limitations under either North Carolina or South Carolina law. (See Docket Entry 19 at 2.)

To resolve Plaintiff's Motion to Leave, the Court must first determine the applicable law. As a general rule, when exercising either supplemental or diversity jurisdiction over state-law claims, federal courts apply the choice-of-law rules of the state in which they sit. ITCO Corp. v. Michelin Tire Corp., Commercial Div., 722 F.2d 42, 49 n.11 (4th Cir. 1983), on reh'g, 742 F.2d 170 (4th Cir. 1984); Bethel v. Federal Express Corp., No. 1:09cv613, 2010 WL 3242651, at *5 (M.D.N.C. Aug. 16, 2010). Thus, the Court would normally apply North Carolina's choice of law rules to Plaintiff's state-law claims. See Bethel, 2010 WL 3242651, at *5.

However, the fact that Plaintiff initiated this action in the D.C. Court, which then transferred it to this Court, complicates the choice-of-law analysis. See Martin v. Stokes, 623 F.2d 469, 473 (6th Cir. 1980) (explaining "that the choice of law is dependent on the nature of the transfer"). If the D.C. Court transferred this action pursuant to 28 U.S.C. § 1404(a), the Court must apply the choice-of-law rules applicable in the D.C. Court. See Pender v. Bank of Am. Corp., 788 F.3d 354, 369 (4th Cir. 2015); Martin, 623 F.2d at 473. Conversely, if the D.C. Court transferred this action pursuant to 28 U.S.C. § 1406(a), the choice-of-law rules that govern in this Court would apply. See Ellis v. Great Sw. Corp., 646 F.2d 1099, 1110 (5th Cir. 1981) ("[F]ollowing a

8

section 1406(a) transfer, . . . the transferee court must apply the choice of law rules of the state in which it sits."); Martin, 623 F.2d at 473; see also Proctor v. Morrissey, 97 F.3d 1448, *5 (4th Cir. 1996) (unpublished) (observing that D.C. law "would apply" if case were transferred from Virginia to D.C. under 28 U.S.C. § 1406(a)).

For the convenience of the parties or witnesses, Section 1404(a) authorizes transfers between courts possessing venue over the action.  28 U.S.C. § 1404(a); see Van Dusen v. Barrack, 376 U.S. 612, 634 (1964) (observing that Section "1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege").  Conversely, Section 1406(a) authorizes a court that lacks venue over an action to transfer it to a court "in which it could have been brought" initially.  28 U.S.C. § 1406(a); see Van Dusen, 376 U.S. at 634 (explaining that Section "1406(a) provides for transfer from forums in which venue is wrongly or improperly laid").  Here, the D.C. Court determined that "venue in the District of Columbia is improper."  (Docket Entry 3 at 1.) Accordingly, its transfer of this action occurred pursuant to 28 U.S.C. § 1406(a).  See Van Dusen, 376 U.S. at 634.  Therefore, North Carolina's choice-of-law rules govern this action.

Under North Carolina's choice-of-law rules, the law of the forum (i.e., North Carolina) applies to procedural issues.  See Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54

(1988) ("Our traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum."); see also Stack v. Abbott Labs., Inc., No. 1:12cv148, 2016 WL 4491410, at *3 (M.D.N.C. Aug. 24, 2016) (examining choice-of-law rules), report and recommendation adopted, No. 1:12cv148, 2016 WL 5679028 (M.D.N.C. Sept. 30, 2016). Under North Carolina law, statutes of limitations qualify as procedural rather than substantive. See Boudreau, 322 N.C. at 340, 368 S.E.2d at 857; see also Stack, 2016 WL 4491410, at *3. Thus, North Carolina law governs the statute of limitations issues in this action. See MedCap Corp. v. Betsy Johnson Health Care Sys., Inc., 16 F. App'x 180, 182 (4th Cir. 2001) ("Since the North Carolina courts would apply North Carolina's own statute of limitations to this action, North Carolina law governs this issue." (citation omitted)); Stack, 2016 WL 4491410, at *3 ("Having determined that the statute of limitations is procedural, the Court will determine whether [the plaintiff's] claims are barred under North Carolina law.").

Under North Carolina law, courts lack authority to extend an expired statute of limitations. See Wilkes Cty. v. Forester, 204 N.C. 163, 167 S.E. 691, 694-95 (1933); Congleton v. City of Asheboro, 8 N.C. App. 571, 573, 174 S.E.2d 870, 872 (1970). North Carolina imposes a three-year statute of limitations on invasion of

privacy claims.  See Aikens v. Ingram, 524 F. App'x 873, 878 (4th Cir. 2013); see also Losing v. Food Lion, L.L.C., 185 N.C. App. 278, 284, 648 S.E.2d 261, 265 (2007) (citing N.C. Gen. Stat. § 1-52(5)).  Plaintiff's invasion of privacy claim concerns events in January 2009.  (See Docket Entry 5 at 1; see also Docket Entry 14 at 1 (discussing "the 2009 claim of Invasion of Privacy").)  The three-year statute of limitations had thus expired before Plaintiff initiated this action in March 2016 (see Docket Entry 1).  The Court therefore lacks authorization to grant the requested extension of the statute of limitations.  See Congleton, 8 N.C. App. at 573, 174 S.E.2d at 872.

Accordingly, the Court denies the Motion to Leave.

## II.  Motion to Dismiss

### A.  Applicable Standards

Defendant moves to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6).  (See Docket Entry 10 at 1.)  To avoid such dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct.  Id.  Facts that remain "'merely consistent with'" liability fail to establish a plausible claim for relief.  Id.

11

(quoting <u>Twombly</u>, 550 U.S. at 557). However, the complaint need not contain detailed factual recitations, as long as it provides the defendant "fair notice of what the claim is and the grounds upon which it rests." <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks and alteration omitted).

In reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." <u>Coleman v. Maryland Court of Appeals</u>, 626 F.3d 187, 189 (4th Cir. 2010), <u>aff'd sub nom.</u>, <u>Coleman v. Court of Appeals of Md.</u>, 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

Nevertheless, the Court "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'" <u>United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.</u>, 707 F.3d 451, 455 (4th Cir. 2013) (quoting <u>Wag More Dogs, LLC v. Cozart</u>, 680 F.3d 359, 365 (4th Cir. 2012)); <u>see also</u> <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for

the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 679).

Furthermore, a Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve <u>contests</u> surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (emphasis added). Thus, "claims lacking merit may be dealt with through summary judgment under Rule 56" rather than through a Rule 12(b)(6) motion. <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 514 (2002). Nevertheless, dismissal remains "appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." <u>Brooks v. City of Winston-Salem, N.C.</u>, 85 F.3d 178, 181 (4th Cir. 1996) (citing "5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 352 (1990) ('A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading,' rendering dismissal appropriate.)").

13

**B. Invasion of Privacy Claim**

Defendant moves to dismiss Plaintiff's invasion of privacy claim regarding the 2009 CDL physical as time-barred. (See Docket Entry 10 at 2; Docket Entry 11 at 4-5.) As discussed above, the three-year statute of limitations for Plaintiff's invasion of privacy claim expired prior to his initiation of this action in March 2016. See Section I(E). Plaintiff concedes that his 2009 invasion of privacy claim qualifies as time-barred. (Docket Entry 14 at 1.) Nevertheless, Plaintiff asserts:

> In 2014, while attending the orientation at the same Terminal as in 2009 (Greer, [S]outh Carolina), and being examined by the same Swift Transportation Medical Review Officer (as in 2009), the simple fact that the Plaintiff did see a camera present in 2009, gives the Plaintiff probable cause to reasonably believe the possibility and even probability of a hidden camera being present (in 2014) recording, and or taking pictures (without knowledge or consent of [P]laintiff) is a valid claim in which relief can be granted.

(Id.)

To begin with, even liberally construed, Plaintiff's Amended Complaint does not fairly raise an invasion of privacy claim regarding the 2014 CDL physical. (Compare Docket Entry 5 at 2 (discussing his 2014 physical in the section regarding his FCRA claim), with id. at 1 (detailing his 2009 invasion of privacy claim); see also id. at 3 (discussing, in the "Summary of complaint as amended," only events in 2009 in his "grievance" regarding the

14

CDL physical).)[2] Even overlooking this deficiency, the mere fact that Plaintiff "noticed a 'silver digital camera' present in the room[] on the [Medical Review Officer's] desk" during his 2009 CDL physical (id. at 1), does not plausibly suggest that a hidden camera existed in the exam room during his CDL physical five years later. Accordingly, any invasion of privacy claim regarding the 2014 examination would be subject to dismissal under Rule 12(b)(6). See Iqbal, 556 U.S. at 678-79.

Under these circumstances, the Court should dismiss Plaintiff's invasion of privacy claim as time-barred.

---

2 Plaintiff's purported invasion of privacy claims concern events in Greer, South Carolina. (Docket Entry 5 at 1-3.) Thus, under North Carolina's traditional choice-of-law rules, the substantive law of South Carolina governs Plaintiff's invasion of privacy claim(s). See Boudreau, 322 N.C. at 335, 368 S.E.2d at 854 (explaining that the law of the place of injury governs in tort claims). South Carolina recognizes an invasion of privacy claim for "the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." Swinton Creek Nursery v. Edisto Farm Credit, ACA, 334 S.C. 469, 478, 514 S.E.2d 126, 130 (1999). This tort consists of four elements: "(1) *Intrusion*," including "watching, spying, prying, besetting, overhearing, or other similar conduct[;]" "(2) *Into that which is private*," that is, "[t]he intrusion on the plaintiff must concern those aspects of himself, his home, his family, his personal relationships, and his communications which one normally expects will be free from exposure to the defendant[;]" that qualifies as both "(3) *Substantial and unreasonable enough to be legally cognizable*[;]" and "(4) *Intentional*." Snakenberg v. Hartford Cas. Ins. Co., 299 S.C. 164, 171-72, 383 S.E.2d 2, 6 (Ct. App. 1989).

## C.  Defamation Claim

### i.  Applicable Law

Defendant moves to dismiss Plaintiff's defamation claim on the grounds that it lacks specificity (Docket Entry 11 at 6-7) and "would be qualifiedly privileged" (id. at 7).  In so doing, Defendant primarily relies on North Carolina law.  (See Docket Entry 11 at 6-7 (citing decisions applying North Carolina law); Docket Entry 21 at 4 (same).)  However, Defendant's reply memorandum in support of its Motion to Dismiss acknowledges that a choice-of-law question exists (see, e.g., Docket Entry 21 at 2 n.2) and asserts that, "even if South Carolina law applied, Plaintiff would still fail to meet the requirements to state a claim for defamation" (id. at 3 n.3 (citing two South Carolina decisions in support of its specificity challenge)).

For tort claims, such as defamation, North Carolina applies the law of "'the situs of the claim,' i.e., where the injury occurred."  Bethel, 2010 WL 3242651, at *5 (quoting Boudreau, 322 N.C. at 335, 368 S.E.2d at 854).  In the defamation context, "the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties."  Wells v. Liddy, 186 F.3d 505, 521-22 (4th Cir. 1999); see also Restatement (First) of Conflict of Laws § 377 n.5 (1934) ("Where harm is done to the reputation of a person, the

16

place of wrong is where the defamatory statement is communicated.").

The Amended Complaint asserts that Defendant falsely reported to at least six prospective employers that Plaintiff failed a drug test. (See Docket Entry 5 at 2.) The Amended Complaint does not specify where those communications occurred or the location(s) of the prospective employers. (See id. at 1-3.) In regard to locations, the caption of the Amended Complaint identifies an Arizona address for Defendant and a North Carolina address for Plaintiff. (Id. at 1.) Yet, it remains unclear whether Plaintiff resided in North Carolina at the time of the alleged defamation, for he asserts that "[he] was domiciled in Washington, D.C. prior to residing in the state of North Carolina" (Docket Entry 14 at 1), and alleges that Defendant's "libel" "caus[ed Plaintiff] to lose work from at least (6) different Trucking Companies," resulting in his relocation to "[his] 98 year old Grandmother's house" (Docket Entry 5 at 2). Finally, the Amended Complaint identifies Greer, South Carolina as the primary site of the interactions between Defendant and Plaintiff. (See id. at 1-3.) In sum, the current record connects Defendant to Arizona and South Carolina; Plaintiff to D.C., South Carolina, and North Carolina; and the prospective employers to no specific state.

Accordingly, further factual development remains necessary to establish the particular location(s) where Defendant allegedly

conveyed the defamatory reports to Plaintiff's prospective employers. As such, the Court cannot resolve the choice-of-law question at this juncture in the proceedings. See, e.g., Graboff v. The Collern Firm, Civ. Action No. 10-1710, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010) (explaining that, "[d]ue to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings," and that, "[h]ere, a choice of law analysis is premature because the record lacks necessary facts for the [c]ourt to conduct the fact-intensive, context-specific analysis required"); see also Clean Earth of Md., Inc. v. Total Safety, Inc., No. 2:10-cv-119, 2011 WL 1627995, at *4 (N.D. W. Va. Apr. 28, 2011) ("Importantly, a court is typically in a better position to decide a choice of law issue after the parties have developed the factual evidence through the process of discovery." (collecting cases)). Under these circumstances, the Court should consider first whether Plaintiff's defamation claim suffices under North Carolina law, as it constitutes one of the potentially applicable bodies of laws and remains the one upon which Defendant has focused. See generally Graboff, 2010 WL 4456923, at *8 (explaining that the plaintiff's claim would survive a motion to dismiss if it sufficed under any potentially governing set of laws).

18

### ii. Specificity Challenge

Defendant maintains that Plaintiff's defamation claim lacks sufficient specificity to survive a motion to dismiss. (See Docket Entry 11 at 6-7; Docket Entry 21 at 3-4.) In particular, Defendant asserts that the Amended Complaint lacks "any explanation of who made [the] allegedly defamatory statements, to whom they were made, when they were made, or what the statements were." (Docket Entry 21 at 3.) Defendant's argument lacks merit.

In evaluating Plaintiff's defamation claim, the Court applies state substantive law and federal procedural law. See Hanna v. Plumer, 380 U.S. 460, 465 (1965). Rule 8, "which specifies the general rules of pleading in federal court," Wuchenich v. Shenandoah Mem'l Hosp., No. 99-1273, 215 F.3d 1324 (table), 2000 WL 665633, at *14 (4th Cir. May 22, 2000) (unpublished), "does not contain a special pleading requirement for defamation," id.; see also TMM Data, LLC v. Braganza, No. 5:14-cv-729, 2015 WL 4617326, at *5 (E.D.N.C. July 31, 2015) (explaining that, "unlike fraud claims, there is no heightened pleading standard for [defamation]"); Exclaim Mktg. v. DIRECTV, Inc., No. 5:11-cv-684, 2012 WL 3023429, at *8 (E.D.N.C. July 24, 2012) ("[N]either the [Rules] nor the Fourth Circuit impose a special or heightened pleading standard for defamation." (internal quotation marks omitted)). Thus, "the liberal pleading requirement of Rule 8(a) requiring only a short and plain statement showing the pleader is

entitled to relief applies" to Plaintiff's defamation claim.  Moore v. Cox, 341 F. Supp. 2d 570, 575 (M.D.N.C. 2004).

In this case, contrary to Defendant's position (see Docket Entry 21 at 3), the Amended Complaint does set forth who said what to whom.  Specifically, the Amended Complaint alleges that Defendant (who) falsely told at least six prospective employers (to whom) that Plaintiff failed a drug test (what).  (See Docket Entry 5 at 2 (alleging that Defendant conveyed "false, erroneous information about [Plaintiff] to prospective employers, stating that [he] ha[d] failed a drug test . . ., causing [him] to lose work from at least (6) different Trucking Companies").)  The Amended Complaint further states that "[t]he libel was last published in June 2015."  (Id.)

Moreover, under the standards of Twombly and Iqbal, the Amended Complaint states a plausible defamation claim.  "In order to state a claim for defamation [under North Carolina law], a plaintiff must allege that the defendant made a false statement of or concerning a plaintiff; communicated the statement to some person or persons other than the plaintiff; and that the plaintiff was damaged."  Moore, 341 F. Supp. 2d at 574.  If the statement qualifies as defamatory "when considered alone, without innuendo or explanatory circumstances," it constitutes defamation per se, and

20

the law presumes malice and damages. Id.[3] If, however, the defamatory nature of the statement becomes apparent "only in connection with extrinsic, explanatory facts," the statement qualifies as defamation per quod, and the plaintiff must plead special damages (i.e., some pecuniary harm). Id.

According to the Amended Complaint, Plaintiff seeks work as a commercial truck driver. (See, e.g., Docket Entry 5 at 2 ("Since 2009, I have been consistently looking for a Trucking Job . . . .").) The Amended Complaint alleges that, in and before June 2015, Defendant falsely told Plaintiff's prospective employers that Plaintiff failed a drug test, "causing [him] to lose work from at least (6) different [t]rucking [c]ompanies." (Id. at 2.)[4] As the Amended Complaint alleges that Defendant reported to third parties

_____

3  A writing qualifies as libel per se when it, considered "without innuendo, colloquium or explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." Renwick v. News & Observer Publ'g Co., 310 N.C. 312, 317, 312 S.E.2d 405, 409 (1984).

4  Federal regulations prohibit employment of commercial truck drivers who test positive for controlled substances pending such driver's successful completion of controlled substance education and/or treatment and a negative drug test result. See 49 C.F.R. § 40.305(a); see also 49 C.F.R. § 382.215 (prohibiting drivers from working if they test positive for a controlled substance and prohibiting "employer[s] having knowledge that a driver has tested positive" from permitting such work); 49 C.F.R. § 382.217(a) ("No employer may allow, require, permit or authorize a driver to operate a commercial motor vehicle during any period in which an employer determines that a driver is not in compliance with the return-to-duty requirements [after failing a drug test.]").

false information about Plaintiff that harmed Plaintiff's employment prospects, it states a plausible North Carolina defamation claim. See, e.g., Shaffer v. Gaither, No. 5:14-cv-106, 2015 WL 1249670, at *8 (W.D.N.C. Mar. 18, 2015); Market Choice, Inc. v. New Eng. Coffee Co., No. 5:08-cv-90, 2009 WL 2590651, at *6 (W.D.N.C. Aug. 18, 2009); Moore, 341 F. Supp. 2d at 575; see also Badame v. Lampke, 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955) ("It is well settled that false words imputing to a merchant or business man conduct derogatory to his character and standing as a business and tending to prejudice him in his business are actionable, and words so uttered may be actionable per se.").

Therefore, the Court should reject Defendant's specificity challenges to Plaintiff's defamation claim.

### iii. Privilege Challenge

Defendant additionally contends that "any statements that [it] made about Plaintiff's drug testing would be qualifiedly privileged." (Docket Entry 11 at 7.) "In a defamation action [under North Carolina law,] qualified privilege is an affirmative defense" that generally "must be specially pleaded." Stewart v. Nation-Wide Check Corp., 279 N.C. 278, 283, 182 S.E.2d 410, 414 (1971). The defendant bears the burden of "establish[ing] facts sufficient to support this plea." Id. According to the North Carolina Supreme Court:

A qualified or conditionally privileged communication is one made in good faith on any subject

matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.

Id. at 285, 182 S.E.2d at 415 (internal quotation marks omitted). Notably, "[a]lthough a qualified privilege may provide an affirmative defense against a defamation action, if the qualified privilege is found to be abused, then the privilege ceases to exist. The qualified privilege may be lost by proof of actual malice on [the] defendant's part or excessive publication by the defendant." Alpar v. Weyerhaeuser Co., 20 N.C. App. 340, 346, 201 S.E.2d 503, 508 (1974).

Here, Defendant seeks dismissal of Plaintiff's defamation claim based on the "qualified privilege that applies to statements trucking companies must make to licensing authorities and other motor carriers." (Docket Entry 21 at 3-4.)[5] Defendant appears to derive this privilege from federal regulations. (See Docket Entry 11 at 7 (describing Jones v. Con-Way Freight, Inc., No. 3:12-cv-724, 2014 WL 1120062, at *10-11 (W.D.N.C. Mar. 20, 2014)

---

5 Defendant initially described this qualified privilege as applying to statements made to state licensing authorities. (See Docket Entry 11 at 7.) The Amended Complaint does not allege reports to state licencing authorities. (See Docket Entry 5 at 1-3.)

(citing 49 C.F.R. § 40.331(g)) as "explaining that a trucking company had a duty to notify state licensing authorities about drug testing results and that such communications are subject to a qualified privilege under North Carolina law").)

Federal regulations authorize trucking companies to disclose certain information, including drug test results, to subsequent employers "only as expressly authorized by the terms of the driver's [written] request." 49 C.F.R. § 382.405(f); accord 49 C.F.R. §§ 40.321, 40.331(a), 382.405(h). Federal regulations further oblige trucking companies to refrain from "fraudulent or intentionally false statement[s]" when providing such information, 49 C.F.R. § 390.35(a), and strip protections against defamation actions from, inter alia, "persons who knowingly furnish false information" regarding drug test results, 49 C.F.R. § 391.23(l)(2). Thus, any privilege regarding disclosures to other trucking companies under federal regulations remains carefully circumscribed and heavily fact-dependent.

The Amended Complaint alleges that Defendant provided false information (namely, that Plaintiff failed a drug test) to trucking companies interested in hiring Plaintiff. (See Docket Entry 5 at 2.) Because these allegations do not "clearly reveal[] the existence of a meritorious affirmative defense," dismissal remains inappropriate. Brooks, 85 F.3d at 181. Accordingly, at least at this stage of the proceedings, the Court should reject Defendant's

24

qualified privilege contention.  See, e.g., Liverpool v. Con-Way,

Inc., No. 08-cv-4076, 2010 WL 4791697, at *6-8 (E.D.N.Y. Nov. 18,

2010) (rejecting, on summary judgment, defendant trucking company's

privilege contentions concerning plaintiff truck driver's

defamation claim regarding the defendant's allegedly false

statements to prospective employers about the plaintiff's drug test

results).

    In sum, the Court should deny Defendant's request to dismiss

Plaintiff's defamation claim.[6]

---

        6  Even if Plaintiff's defamation claim failed under North
Carolina law, the Court could decline to dismiss due to the
uncertainty over the choice-of-law question.  See, e.g., Alifax
Holding SpA v. Alcor Sci., Inc., Civ. Action No. 14-440, 2015 WL
5714727, at *3 (D.R.I. Sept. 29, 2015) ("Thus, at this early
juncture and with the absence of adequate choice-of-law briefing
from the parties, the [c]ourt is unwilling to determine what law
applies to Count Three.  Because [the d]efendants' arguments for
dismissal of that count all rely on the assumption that [a
particular state's] law governs, [the d]efendants' motion is denied
with respect to that count."); Kvaerner U.S. Inc. v. Kemper Envtl.
Ltd., No. 2:06cv403, 2006 WL 3064104, at *4 (W.D. Pa. Oct. 26,
2006) (denying motion to dismiss where "[t]he parties have not
briefed the outcome under each potentially applicable governing
law," explaining that "[d]iscovery will enable the [c]ourt to
evaluate the 'choice of law' factors based on a more-developed
factual record," and that the defendant "will have the opportunity
to renew its arguments based on a more complete evidentiary record
at the summary judgment stage"); see also In re Dombroski, 478 B.R.
198, 204 (Bankr. M.D. Pa. 2012) ("In sum, there are too many
unknown facts to effect a choice-of-law decision.  Because the
choice-of-law could well impact the ultimate outcome of the case,
I cannot determine that [the movant] is entitled to judgment as a
matter of law; summary judgment is, therefore, inappropriate.").

## D. FMCSR Claim

Plaintiff maintains that Defendant's allegedly false statements regarding his drug test results also violated the FMCSR. (See, e.g., Docket Entry 5 at 3 ("This is an action against the violations that have occurred under the Federal Motor Carrier Safety Regulations (FMCSR) codes 390.35 . . . and 390.37 . . . .").) In response, Defendant asserts that "Plaintiff's allegations do not fall within the scope of the regulations" covered by 49 C.F.R. § 390.35. (Docket Entry 21 at 5.) More specifically, Defendant contends that "the regulation on which Plaintiff relies, 49 C.F.R. § 390.35, only applies to certain documents regarding emission standards and identification reports" — rather than "all documents created by a motor carrier" — and does not cover the conduct of which Plaintiff complains. (Id.)

Pursuant to Section 390.35, "[n]o motor carrier . . . shall make or cause to make . . . [a] fraudulent or intentionally false statement on any application, certificate, report, or record required by part 325 of subchapter A or this subchapter." 49 C.F.R. § 390.35(a). Section 390.35 further prohibits motor carriers from making "[a] fraudulent or intentionally false entry on any application, certificate, report, or record required to be used, completed, or retained, to comply with any requirement of this subchapter or part 325 of subchapter A." 49 C.F.R. § 390.35(b). "[T]his subchapter" constitutes the FMCSR, see 49

26

C.F.R. Subt. B, Ch. III., Subch. B, which includes regulations regarding controlled substance testing and records, see, e.g., 49 C.F.R. §§ 382.101 - 382.415; see also 49 C.F.R. § 391.23 (detailing investigations concerning truck drivers required of motor carriers).[7]  As such, Plaintiff's allegations regarding Defendant's continued transmission of "false, erroneous information . . . stating that [Plaintiff] ha[d] failed a drug test" (Docket Entry 5 at 2) implicate FMCSR regulations covered by 49 C.F.R. § 390.35. See, e.g., 49 C.F.R. §§ 382.401, 382.405, 391.23.  Thus, Defendant's regulatory scope argument lacks merit.

However, Defendant also argues that "no private cause of action" exists under the FMCSR.  (Docket Entry 10 at 2.)[8]  In other

_____

    7   "[P]art 325 of subchapter A," 49 C.F.R. § 390.35(a), references regulations concerning "Compliance with Interstate Motor Carrier Noise Emission Standards," 49 C.F.R. Subt. B, Ch. III., Subch. A, Pt. 325.  See 49 C.F.R. §§ 325.1 - 325.93.

    8   More fully, Defendant contends "that the Motor Carrier Safety Act and its regulations do not create a private cause of action." (Docket Entry 21 at 4 (relying on Courtney v. Ivanov, 41 F. Supp. 3d 453, 457 (W.D. Pa. 2014); Lipscomb v. Zurich Am. Ins. Co., Civ. Action No. 11-2555, 2012 WL 1902595, at *2 (E.D. La. May 25, 2012)); accord Docket Entry 11 at 7-8.)  Courtney and Lipscomb analyze the existence of a private right of action pursuant to 49 U.S.C. § 14704(a).  See Courtney, 41 F. Supp. 3d at 457-58 (concluding that 49 U.S.C. "§ 14704(a)(2) creates a private right of action for damages in commercial disputes involving violations of the Motor Carrier Act and its regulations, but not for personal injury actions such as the one in the instant case" (internal quotation marks omitted)); Lipscomb, 2012 WL 1902595, at *2-3 (analyzing "whether 49 U.S.C. § 14704(a)(2) (2006) expressly or impliedly provides a private right of action for personal injury claims").  Section 14704 creates a private right of action for certain violations of the Motor Carrier Act and its associated regulations.  See, e.g., Fulfillment Servs. Inc. v. United Parcel

27

words, Defendant contends that Plaintiff cannot pursue through litigation his claim that Defendant violated the FMCSR. See Cannon v. University of Chi., 441 U.S. 677, 688 (1979) (explaining that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person").

In response to Defendant's private right of action argument, Plaintiff states (without further elaboration):

> Certificates, Reports, and Records Falsification, Reproduction, or Alteration, are in Direct violation to the Federal Motor Carrier Safety Regulations Act, pursuant to statute section (390.35) of the (FMCSR) code. In addition to that, statute section (390.37) clearly states, Violation and penalty. Any person who violates

---

Serv., Inc., 528 F.3d 614, 620 (9th Cir. 2008) ("We have previously held that § 14704(a)(2) creates a private cause of action for violations of the M[otor Carrier Act] and its attendant regulations, and neither party disputes this basic premise."); Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc., 192 F.3d 778, 785 (8th Cir. 1999) ("[W]e conclude that 49 U.S.C. § 14704(a) authorizes private actions for damages and injunctive relief to remedy at least some violations of the Motor Carrier Act and its implementing regulations."). However, Section 14704(a) applies only to "violation[s] of this part" of the code. 49 U.S.C. § 14704(a)(2); see also 49 U.S.C. § 14704(a)(1) ("A person injured because a carrier or broker providing transportation or service . . . does not obey an order of the Secretary or the Board, as applicable, under this part . . . may bring a civil action to enforce that order under this subsection."). "[T]his part" constitutes Part B of Subtitle IV of Title 49 of the United States Code, 49 U.S.C. §§ 13101-14916. See 49 U.S.C. § 14704(a). In contrast, the drug-testing authority appears in Subtitle VI of Title 49. See McDowell v. J.B. Hunt Transp., Inc., Civ. Action No. 03 C 6590, 2004 WL 1878334, at *2 (N.D. Ill. Aug. 10, 2004).

28

> the rules set fourth in this subchapter or part 325 of subchapter (A), may be subject to civil or criminal penalties.

(Docket Entry 14 at 2.)

"[P]rivate rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). The existence of a private right of action to enforce a regulation depends upon the authorizing statute for such regulation. Id. at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). Hence, "[t]he question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 15 (1979). In ascertaining whether a private cause of action exists, a court must interpret the relevant statute "to determine whether it displays an intent to create not just a private right but also a private remedy." Alexander, 532 U.S. at 286. "Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 286-87.

Plaintiff seeks to bring a claim pursuant to 49 C.F.R. §§ 390.35 and 390.37 for Defendant's alleged provision of reports that falsely stated that he failed a drug test. (See Docket Entry

5 at 2-3.)  The pertinent authorizing statutes for these regulations do not expressly create a private right of action in these circumstances.  See, e.g., 49 U.S.C. §§ 508, 31133, 31136, 31502.  Thus, "the question is whether a private right of action is implied in the[se] statute[s]."  McDowell v. J.B. Hunt Transp., Inc., Civ. Action No. 03 C 6590, 2004 WL 1878334, at *3 (N.D. Ill. Aug. 10, 2004).

The Supreme Court has identified several factors that may assist in determining whether an implied right of action exists:

> First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff?  Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?  Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?  And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

Cannon, 441 U.S. at 688 n.9 (emphasis in original; internal quotation marks and citations omitted).  Ultimately, though, "the interpretive inquiry begins with the text and structure of the statute and ends once it has become clear that Congress did not provide a cause of action."  Alexander, 532 U.S. at 288 n.7 (citation omitted).

As an initial matter, the Federal Omnibus Transportation Employee Testing Act of 1991 (the "FOTETA") constitutes the

relevant statutory authority for the drug-testing FMCSR regulations. McDowell, 2004 WL 1878334, at *2. Notably, no private right of action exists under FOTETA. See id. at *4 ("[C]ases analyzing FOTETA and regulations promulgated thereunder have uniformly found that the statute does not expressly or impliedly create a private right of action." (collecting cases)); see also Koob v. CRH Transp., Inc., No. 4:07cv1603, 2007 WL 4365731, at *10-11 (E.D. Mo. Dec. 10, 2007) ("FOTETA's implementing regulations describe the inquiries and investigations an employer must make into his employee drivers . . . [and] the methods for correcting erroneous information within drug test records, 49 C.F.R. § 391.23(j) . . . . [N]either FOTETA nor the implementing regulations create a federal cause of action . . . for an employee wronged by DOT drug testing procedures."). Congress's failure to include a private right of action for FOTETA-related drug testing counsels against implying such a right for Sections 390.35 and 390.37. See Alexander, 532 U.S. at 293 n.8 (observing that "affirmative evidence of congressional intent must be provided *for* an implied remedy, . . . for without such intent the essential predicate for implication of a private remedy simply does not exist" (emphasis in original; internal quotation marks omitted)).

Moreover, many of the authorizing statutes for Sections 390.35 and 390.37 concern the powers of the Secretary of Transportation. See, e.g., 49 U.S.C. § 31133 ("General Powers of the Secretary of

Transportation"); see also 49 U.S.C. § 13301 (detailing Secretary's powers to, inter alia, issue subpoenas and depose witnesses).[9] This focus on the Secretary suggests that commercial drivers such as Plaintiff do not qualify as a "class for whose *especial* benefit the statute[s] w[ere] enacted," Cannon, 441 U.S. at 688 n.9 (emphasis in original), militating against an implied right. In addition, the statutory scheme and pertinent regulations provide enforcement mechanisms for federal entities. See, e.g., 49 U.S.C. § 507(c) (authorizing the Attorney General to bring a federal lawsuit to redress violations "of a provision of subchapter III of chapter 311 . . . or section 31502 of this title, or an order or regulation issued under any of those provisions"); 49 U.S.C. § 521(b) (making those who violate, inter alia, regulations regarding employee qualifications and/or recordkeeping requirements liable to the United States for civil penalties); 49 C.F.R. § 382.507 ("Any employer or driver who violates the requirements of this part [or of 49 CFR part 40] shall be subject to the civil and/or criminal penalty provisions of 49 U.S.C. [§] 521(b)."); see also Starr Transport, LLC, Docket No. FMCSA-2012-0080, 2012 WL

_____

9 Effective as of January 2017, the list of authorizing statutes for Part 390 of Title 49 of the Code of Federal Regulations contains Section 13301. See Unified Registration System; Suspension of Effectiveness, 82 FR 5292-01, 2017 WL 151523, at *5310 (Fed. Motor Carrier Safety Admin. Jan. 17, 2017) ("The authority citation for part 390 is revised to read as follows: Authority: 49 U.S.C. 508, 13301, 13902, 13908, 31132, 31133, 31136, 31151, 31502, 31504 . . . .") (amending 49 C.F.R. Parts 360, 365, 366, 368, 385, 387, & 390).

3027398, at *1 (Fed. Motor Carrier Safety Admin. July 20, 2012) (accepting agency settlement regarding allegation that trucking company "committed one violation of 49 CFR § 390.35(b)/391.23(g); making or causing to make fraudulent or intentionally false entry on a record or report required to comply with 49 CFR Part 391.23(g)").[10] These enforcement mechanisms indicate that "a private right of action is not necessary to further [statutory] purposes." McDowell, 2004 WL 1878334, at *4.

Finally, a significant indication of congressional intent lies in 49 U.S.C. § 508. This statute prohibits actions for "defamation, invasion of privacy, or interference with a contract . . . based on the furnishing or use of safety performance records in accordance with regulations" against any motor carrier that complies with FMCSR regulations. 49 U.S.C. § 508(a). This protection against state-law torts does not apply unless, inter alia, "the complying person and any agents of the complying person have taken all precautions reasonably necessary to ensure the accuracy of the records and have complied with the regulations issued by the Secretary in furnishing the records, including the requirement that the individual who is the subject of the records be afforded a reasonable opportunity to review and comment on the

---

10  The regulation at issue in Starr Transport obliges former employers to provide driver drug history reports in response to requests for such information. See 49 C.F.R. § 391.23(e),(g).

33

records." 49 U.S.C. § 508(b)(2)(A).[11] It also "does not apply to persons who knowingly furnish false information." 49 U.S.C. § 508(b)(3).

Notably, although Section 508 strips protections against state-law torts for those who fail to comply with the regulations, it does not expressly provide a private right of action to enforce the regulations. See generally 49 U.S.C. § 508. By authorizing defamation and other state-law tort claims when a motor carrier violates regulations regarding an individual's drug-testing records, without mentioning a private right of action for such person, this statute reflects a congressional intent against authorizing a federal private right of action in this context. See, e.g., Transamerica, 444 U.S. at 19 ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."); see also id. at 20 ("In view of these express provisions for enforcing the duties imposed by [the statute], it is highly improbable that Congress absentmindedly forgot to mention an intended private action." (internal quotation marks omitted)); Koob, 2007 WL 4365731, at *1, 12 (determining that no federal jurisdiction exists as to trucker's libel claim against

_____

    11  Consistent with Section 508, the regulations establish procedures for truck drivers to request correction of erroneous information in these records. See 49 C.F.R. § 391.23(j).

trucking company for alleged publication of false drug testing records).

In sum, the pertinent statutes (and regulations) evidence a congressional intent for federal entities to remedy violations of the FMCSR and for truckers injured by false drug-testing reports to pursue state-law tort claims, such as defamation, to redress any injuries such violations cause them. Under these circumstances, the Court should grant Defendant's request to dismiss Plaintiff's FMCSR claim.

## **E. FCRA Claim**

Defendant next seeks dismissal of Plaintiff's FCRA claim. (See Docket Entry 11 at 9-10.) The section in the Amended Complaint regarding Plaintiff's FCRA claim states the following:

> 3. Another grievance I have is, I returned to [Defendant] for orientation at the Greer, South Carolina Terminal in 2014 after being accepted. I again had to endure the humiliating process of exposing my bare genitalia to the (MRO), however, this time I did not see any obvious cameras present. After the CDL physical was completed, the (MRO) asked me "if I had any questions, or concerns", and I said "yes, I do." I then asked the (MRO) "if there were any cameras present in the examination room." The (MRO) had a surprised look on his face, as he said, "uh-uhn" (no). He then asked me, "why I asked him that.." [sic] Later that night, at the Motel, I received a telephone call from the Swift Transportation recruiter (on the motel's phone). The recruiter told me "I would be going home." When I asked "why", I was not provided a reason. I was sent home the next day, without reason.
>
> When [Defendant] sent me home without reason in 2014, I feel that under the (FCRA) Fair Credit Reporting Act * (— —, — (—) [sic], my "RIGHT TO KNOW IF I HAVE BEEN

PASSED OVER BECAUSE OF SOMETHING IN MY REPORT", has been violated.

(Docket Entry 5 at 2.)

Plaintiff elaborates upon his allegations in opposing the Motion to Dismiss. (See Docket Entry 14 at 2.) Specifically, Plaintiff contends, "I believe the reason I was not hired was due to the defamatory statements in my background check information contained within the Plaintiff's consumer report." (Id.) Plaintiff also includes a copy of a document entitled, "A Summary of Your Rights Under the Fair Credit Reporting Act" (Docket Entry 15 at 5), and asks, "what Statute Section, or Rule, would exempt Swift Transportation, the Defendant from being subject to the guidelines therewithin" (id. at 4).

Even liberally construed, the allegations in the Amended Complaint do not plausibly suggest that Defendant violated Plaintiff's FCRA rights. As relevant to this action, the FCRA requires a person "using a consumer report for employment purposes" to provide a copy of the report and a written summary of the consumer's FCRA rights to the consumer "before taking any adverse action based in whole or in part on the report." 15 U.S.C. § 1681b(b)(3)(A). However, the Amended Complaint lacks any factual content suggesting that Defendant possessed a copy of Plaintiff's consumer report, let alone that Defendant acted upon it in terminating Plaintiff's participation in its orientation. (See Docket Entry 5.) That fact dooms this claim. See United States ex

36

rel. Nathan, 707 F.3d at 455 (explaining that courts "will not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments" in resolving a Rule 12(b)(6) motion (internal quotation marks omitted)).

Moreover, even assuming Defendant possessed a copy of Plaintiff's consumer report, Plaintiff's FCRA claim still fails. Put simply, it remains at least equally conceivable that Defendant terminated Plaintiff's orientation as a result of concerns raised by his exchange with the Medical Review Officer as it does that Defendant terminated him as a result of anything in his consumer report. See Iqbal, 556 U.S. at 678 (explaining that a claim lacks plausibility where the facts remain "merely consistent with a defendant's liability" and that plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" (internal quotation marks omitted)). Accordingly, Plaintiff fails to state a plausible claim for relief under the FCRA. See id. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

The Court should therefore grant Defendant's request to dismiss Plaintiff's FCRA claim.

## F. Title VII Claim

Finally, Defendant seeks dismissal of Plaintiff's Title VII claim for failure to exhaust administrative remedies. (See Docket Entry 10 at 2.) To bring a Title VII claim, a party must first exhaust administrative remedies by filing a charge with the EEOC. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000).[12] Plaintiff tacitly concedes his failure to exhaust administrative remedies. (See Docket Entry 14 at 2; Docket Entry 15 at 7.) Accordingly, the Court should dismiss Plaintiff's Title VII claim.

## CONCLUSION

Defendant consents to Plaintiff's requested amendment, rendering amendment proper. At this stage in the proceedings, however, Plaintiff's discovery motions remain premature. In addition, Plaintiff has not justified his requests for bifurcation, extension of the statute of limitations, and striking Defendant's filings. Defendant, in turn, has not established grounds for dismissal of Plaintiff's defamation claim. However, the statute of limitations bars Plaintiff's invasion of privacy claim and Plaintiff lacks a private right of action regarding his FMCSR claim. Finally, the Amended Complaint does not state a plausible

---

12 A litigant generally must file the EEOC charge within 180 days of the allegedly discriminatory act. See 42 U.S.C. § 2000e-5(e)(1). In certain circumstances, the 180-day filing period extends to a maximum of 300 days. See id.

FCRA claim, and Plaintiff failed to exhaust administrative remedies on his Title VII claim.

**IT IS THEREFORE ORDERED** that the Motion to Amend Relief (Docket Entry 22) is **GRANTED** insofar as the Amended Complaint is deemed to include as requested relief "Plaintiff's Court costs, all Court related expenses, Court related travel fees, and, possible Attorney(s) fees" (<u>id.</u> at 1).

**IT IS FURTHER ORDERED** that the Motion to Subpoena (Docket Entry 16), the Motion to Compel (Docket Entry 26), the Motion to Bifurcate (Docket Entry 23), the Motion to Strike (Docket Entry 28), and the Motion to Leave (Docket Entry 17) are **DENIED.**

**IT IS RECOMMENDED** that the Motion to Dismiss (Docket Entry 10) be granted in part and denied in part, in that the Court should dismiss all claims except Plaintiff's defamation claim.

This 14th day of March, 2017.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
